UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

WILFRED JULCE,
as special personal representative of
the Estate of Jeanica Julce,

Plaintiff,

v. CIVIL ACTION NO. 25-11146-ADB

RYAN DENVER,

Defendant and Crossclaim Plaintiff,

v.

LEE ROSENTHAL,

Defendant and Crossclaim Defendant,

and,

RYAN DENVER,

Third-Party Plaintiff,

v.

UNITED STATES OF AMERICA,

Third-Party Defendant and Counterclaimant.

MEMORANDUM AND ORDER ON THE PLAINTIFF'S MOTION
TO COMPEL AND FOR SANCTIONS; THE DEFENDANT'S MOTIONS
TO QUASH; AND THE DEFENDANT'S MOTION TO COMPEL. (##45, 47, 50, 56.)

KELLEY, U.S.M.J.

I. The Plaintiff's Motion to Compel and for Sanctions Due to Discovery Abuse is Allowed in Part and Denied in Part. (#45.)

Following a hearing on this motion on August 25, 2026 (#64), the Plaintiff, Wilfred Julce[1] as Special Personal Representative of the Estate of Jeanica Julce, provided the Defendant, Lee Rosenthal, with—and filed on the docket—a proposed list of the types of financial information she seeks. (#65.) The Defendant shall either file an objection to the proposed list or thoroughly familiarize himself with his finances and provide the Plaintiff with the requested information by September 14, 2026. The Defendant shall affirm that the information that he provides the Plaintiff is true and complete under the pains and penalties of perjury.

For the reasons set out below, the Defendant shall also provide the Plaintiff with the following: tax returns from 2021 to 2025 with all attachments (unredacted but for any social security numbers and the names of his children); all trust documents that name the Defendant as a beneficiary; and statements from all checking and savings accounts and credit cards from July 1, 2021, through July 31, 2021, for which he was an authorized user or account holder (whether they be individual, joint, or business). The Plaintiff may also continue the Defendant's deposition for a maximum of three hours excluding breaks. The topic of the deposition shall be limited to the Defendant's finances.

The remainder of the Plaintiff's motion to compel and for sanctions is denied.

A. The Defendant's Obstructionism and Misrepresentations during his Deposition.

A defendant's current net worth is relevant to punitive damages which are available in wrongful death cases. *See Charles v. Leo*, 135 N.E.3d 252, 273 (Mass. App. Ct. 2019); *Katz v. Liberty Power Corp., LLC*, No. 18-cv10506-ABD, 2020 WL 3492469, at *5 (D. Mass. June 26, 2020). Sometimes, a party's own accounting of his or her net worth is sufficient. *See id.* at 5-6. In

[1] The court acknowledges that Evelyne Julce is expected to replace Wilfred Julce as representative of Jeanica Julce's estate. (#43.)

this case, however, the Defendant was so obstructionist and untruthful at his deposition that his self-reporting his net worth would be insufficient. Moreover, his blatant misrepresentations about his finances and his apparent control over entities like West Shore, LLC ("West Shore") (a private business with about 300 employees that he owns with his father (#45-1 at 184-85)) raise the issue of whether he has sought to conceal assets.

The Defendant, during his deposition, answered "I don't know"[2] or lied about essential net worth questions. He claimed not to know how much money he earned (although he later agreed that he may earn about $1 million a year.) *Id.* at 182. He testified, under oath, that the entirety of his personal banking was a checking account and credit card with Bank of America. *Id.* at 202. When discussing investments, the Plaintiff's counsel asked whether the Defendant had a Fidelity account which he denied. *Id.* at 190. In fact, the Defendant claimed not to have any traditional investments and testified that instead, he leaves money in West Shore. *Id.* at 190, 199-200.

But Bank of America statements from July 2021 show that much of the Defendant's testimony was not true. (#45-2.) On July 1, 2021, West Shore wired the Defendant $750,000. *Id.* at 3. The Defendant's account, at one point that month, had a balance of over $1.6 million. *Id.* He sent $250,000 to Fidelity and tens of thousands of dollars to coinbase.com ("Coinbase") (a cryptocurrency trading platform). *Id.* at 3. At the hearing on this motion on August 25, 2026, the Plaintiff's counsel represented that he had received a subpoena response from Coinbase which revealed that the Defendant had approximately $1 million worth of cryptocurrency in an account

[2] The Defendant was so evasive that he claimed not to know whether the Jeeps that he owns are open or closed top, if he keeps them under tarps, and how he got them. (#45-1 at 201-202.)

there. Also in July 2021, the Defendant wrote a check for $1 million to what appears to be an investment fund associated with West Shore.[3] *Id.* at 9.

Obviously, the Defendant was not truthful at his deposition. It is not believable that he forgot about all his personal banking and investments. Accordingly, after receiving documents concerning the Defendant's financial situation, the Plaintiff may continue the Defendant's deposition for an additional three hours excluding breaks. *See* Fed. R. Civ. P. 30(d)(1) ("The court must allow additional time … if the deponent … impedes or delays the examination."); *Colon v. Hosp. Doctors' Ctr. Bayamon, Inc.*, No. CV 24-1355 (MAJ), 2026 WL 1021175, at *2 (D.P.R. Apr. 15, 2026) ("If the deponent or another person impedes or delays the examination, the court may also authorize that the deposition continue for additional time.") (citing Fed. R. Civ. P. 30(d)(1)).

B. Tax Returns.

In *Katz*, the court acknowledged that tax records may be relevant in punitive damages cases but ultimately "ordered [the parties] to meet and confer so that Defendants may provide an honest and accurate representation of their current net worth in the least intrusive means available…." 2020 WL 3492469, at *6 (citing *Lopez v. Mauisun Comp. Sys. Inc.*, No. 12-cv-00414, 2015 WL 13766312, at *2 (D. Az. May 6, 2015)). Given the Defendant's evasiveness and misrepresentations, however, he will not receive the benefit of the "least intrusive means available" as did the defendants in *Katz* where there was no indication of such misconduct. An affidavit setting out his own net worth would be suspect and insufficient. *See Abby v. Paige*, No. 10-23589-CIV, 2012 WL 13012743, at *1 & n.1 (S.D. Fla. Jan. 26, 2012) ("I found that Paige's one-page statement of net worth was inadequate, and I ordered Paige to produce his personal bank statements for the one-

[3] The Defendant also received approximately $200,000 in deposits that month from various funds that appear to be associated with West Shore. (#45-2 at 7.)

year period of November 2010-November 2011, as well as his personal tax returns."). Accordingly, the Defendant's producing his 2025 tax return is necessary to establish his current net worth.

The Defendant's 2021 to 2024 tax returns are also discoverable because his misrepresentations about his finances raise the question of whether he has concealed assets to decrease his net worth on paper.[4] *See United States v. Neumann*, No. CIV. A. 86-0034-F, 1999 WL 156151, at *1 (D. Mass. Mar. 5, 1999) ("In general, discovery is allowed to the extent that it may lead to information relevant to discovery of concealed or fraudulently conveyed assets."); *Internet Direct Response, Inc. v. Buckley*, No. SACV09-01335ABCMLGX, 2010 WL 1752181, at *5 (C.D. Cal. Apr. 29, 2010) (finding, during judgment enforcement proceedings, that the defendant's wife's tax returns were "relevant to determining whether assets of [the defendant] have been concealed" and were therefore discoverable).

C. <u>Trust Documents</u>.

If the Defendant is the beneficiary of any trust, that is relevant to his net worth. *See Katz*, 2020 WL 3492469, at *5 ("this Court recently allowed an interrogatory that sought the identity of 'real property, bank accounts, trusts, or other assets in which [a party] had a legal or beneficial interest' when considering a case in which the plaintiff sought punitive damages") (citing *Boniface, et al. v. Viliena*, No. 17-cv-10477, [ECF No. 107] (April 1, 2020)); *Torres v. Rothstein*, No. 219CV00594APGEJY, 2020 WL 3808899, at *6 (D. Nev. July 6, 2020) (refusing to quash a subpoena for trust documents because they were relevant to the defendant's net worth for punitive damages). For the same reasons as above, an affidavit alone will not suffice.

D. <u>July 2021 Statements.</u>

---

[4] Although courts generally do not allow discovery on a defendant's finances before judgment, the court does so here because the Defendant's current net worth is relevant to the measure of punitive damages. *See Katz*, 2020 WL 3492469, at *5.

According to the Plaintiff, witnesses testified that the Defendant drank alcohol at bars before getting on the boat and smoked marijuana on the boat on the night of the incident. (#45-1 at 17, 28-30.) The Defendant's July 2021 bank and credit card statements are relevant because they may show where and how much money he spent on the night of the incident and days leading up to it.[5]

II. The Defendant's Motion to Quash Thirteen Subpoenas from the Plaintiff (#47) and the Defendant's Motion to Quash Subpoena to Fidelity Workplace Services, LLC (#56) are Allowed in Part and Denied in Part.

The Defendant's financial records from July 2021 to the present are relevant, and therefore the Plaintiff may subpoena them subject to the narrowing below, for several reasons.

The Defendant's purchase records from July 2021 are relevant to show when and what he bought around the time of the incident.

The Defendant's financial records from July 2021 to the present are discoverable because they may show that he concealed assets. Courts allow subpoenas seeking financial records where a defendant's assets are relevant to the case and there is a reasonable belief that he or she may have concealed them. *See Falicia v. Advanced Tenant Servs., Inc.*, 235 F.R.D. 5, 10 (D.D.C. 2006) (refusing to quash a subpoena to a financial services company in part because "there [was a] reasonable belief that inspection of the bank records by the plaintiffs could lead to the discovery of concealed assets of the judgment debtors"); *Karlis v. S.E.C.*, 613 F. Supp. 2d 150, 153 (D. Mass. 2009) (refusing to quash a subpoena seeking bank records because they could "potentially assist" in determining whether the account holder's husband "attempted to conceal" assets); *Neumann*, 1999 WL 156151, at *1 (D. Mass. Mar. 5, 1999). Here, the Defendant's assets are relevant to the

---

[5] The Defendant does not explicitly dispute the relevance of these documents in his opposition. *See* #52.

Plaintiff's punitive damage claim. *See Katz*, 2020 WL 3492469, at *5. The court finds that because of the Defendant's misrepresentations about his finances at his deposition, the Plaintiff is entitled to discovery to learn whether he has taken steps to conceal assets. His financial records from the incident to now are therefore relevant.

Finally, the Defendant's current financial records are discoverable because his current net worth factors into the Plaintiff's claim for punitive damages. *Id*. Courts allow plaintiffs to seek financial records to establish a defendant's net worth in punitive damage cases. *See*, *e.g.*, *Torres*, 2020 WL 3808899, at *2, 5-6 (refusing to quash subpoenas seeking defendant's bank and trust records so that the plaintiff could obtain information about the defendant's net worth as evidence for punitive damages); *Abundes v. Athens Food Servs., LLC*, No. 3:14-1278, 2015 WL 13664280, at *3 (M.D. Tenn. Sept. 18, 2015) (similar); *see also Nat.-Immunogenics Corp. v. Newport Trial Grp*., No. SACV1502034JVSJCGX, 2017 WL 10562762, at *3, 5 (C.D. Cal. June 27, 2017).

Accordingly, the court rules on the Defendant's motion to quash as follows.

A. Banks and Investments.

*Coinbase Inc.*: The subpoena is narrowed to statements of any accounts bearing the name of Lee Rosenthal as an owner and/or authorized using of the account from July 1, 2021, to the present.

*Fidelity Brokerage Services, LLC* (#47): The Defendant's motion is denied as moot.[6]

---

[6] The Plaintiff served two different subpoenas on two different Fidelity entities. The Plaintiff initially served Fidelity Brokerage Services, LLC with a subpoena (#47-2) who responded with a letter requesting that the Plaintiff serve Fidelity Workplace Services, LLC instead. (#58-1.) The Plaintiff then served Fidelity Workplace Services, LLC. The Defendant moved to quash the Plaintiff's subpoena to Fidelity Brokerage Services, LLC along with the other subpoenas. (#47 at 3.) Then, the Defendant filed a second motion to quash, this one aimed at the subpoena to Fidelity Workplace Services, LLC. (#56.) The Plaintiff's counsel indicated that the hearing that he understood Fidelity Workplace Services, LLC (the subject of (#56)) to be the entity to which he should direct his subpoena.

*Fidelity Workplace Services, LLC* (#56): The subpoena is narrowed to statements of any accounts bearing the name of Lee Rosenthal as an owner and/or authorized user of the account from July 1, 2021, to the present.

*JP Morgan Chase Bank, N.A.*: The subpoena is narrowed to statements of any accounts bearing the name of Lee Rosenthal as an owner and/or authorized user of the account from July 1, 2021, to the present.

*Bank of America Corporation*: The subpoena is narrowed to statements of any accounts bearing the name of Lee Rosenthal as an owner and/or authorized user of the account from July 1, 2021, to the present.

*American Express Travel Related Services Company*: The subpoena is narrowed to statements of any accounts bearing the name of Lee Rosenthal as an owner and/or authorized user of the account from July 1, 2021, to July 31, 2021.[7]

*American Express Company Custodian of Records*: The subpoena is narrowed to statements of any accounts bearing the name of Lee Rosenthal as an owner and/or authorized user of the account from July 1, 2021, to July 31, 2021.

B. Accountants.

It appears that the Plaintiff served the accounting firms Walter Shuffain Advisors, Inc. ("Walter Shuffain") and WS CPAS P.C. ("WS") with three subpoenas each, seeking the same information from both. *See* ##48-3, 48-4, 48-5, 48-6, 48-7, 48-8. The Plaintiff seeks the Defendant's account statements and tax returns, West Shore's tax returns, and statements from

[7] At the hearing, the Plaintiff's counsel explained that he sought evidence of fraudulent transfers or concealment and that credit card records would be "window dressing" to that end. The court finds that compared to checking, savings, investment, and tax records, the Defendant's credit card statements are not reasonably likely to reveal evidence of his concealing assets. His credit card records may, however, show what he purchased in July 2021 around the time of the incident.

twenty-one different "funds" that the Plaintiff identifies. The court narrows the subpoenas and directs Walter Shuffain and WS to produce the following documents.

For the reasons discussed above, Walter Shuffain and WS shall provide the Plaintiff with any statements of accounts bearing the name Lee Rosenthal as an owner and/or authorized user from July 2021 to the present. They shall also provide the Plaintiff with the Defendant's tax returns from 2021 to 2025 including all attachments (unredacted but for social security numbers and the names of Defendant's children).

Walter Shuffain and WS shall provide the Plaintiff with West Shore's tax returns from 2021 to 2025. The Defendant testified that he owns West Shore as 50/50 partners with his father and that he invests money by leaving it in West Shore. (#45-1 at 184, 199.) One may reasonably infer that the Defendant has considerable control over West Shore. Its value, therefore, is relevant to both his net worth and whether he has concealed assets within it.

Walter Shuffain and WS shall provide the Plaintiff with statements of Lee Rosenthal's investments in the funds that the Plaintiff has identified in her subpoenas (##48-3, 48-6) from July 1, 2021, to the present. If the statements reveal the identities of other investors in the funds, Walter Schuffain and WS shall redact them. It appears that the Defendant invests or invested in many of the funds that the Plaintiff has identified. In July 2021, he wrote a $1 million check to "West Shore Fund IV LP" and received deposits from "WS Fund III," "West Shr Fund II," "WS Oasis Co Inv," "West Shr Fund LP," and "WS Fund IV." (#45-2 at 7, 9.) Obviously, the value of the Defendant's investment in these funds is relevant to his net worth. His withdrawals or deposits between 2021 and the present could also show an attempt to conceal assets.

C. Insa, Inc.

The Plaintiff's subpoena to Insa, Inc. is narrowed to the receipts and/or records from any purchases made by Lee Rosenthal from January 1, 2021, to December 31, 2021. According to the Plaintiff, there are witnesses who have testified that the Defendant smoked marijuana on the boat on the night of the incident. The Defendant denies doing so and testified that he only occasionally smokes marijuana. (#45-1 at 12-17.) The Defendant's Bank of America records, however, show that he spent over $200 at Insa, Inc., a recreational marijuana dispensary, over two trips in July 2021. (#45-2 at 3, 8.) The Plaintiff may investigate the Defendant's marijuana use as it is relevant to impeachment of the Defendant.

III. The Defendant's Motion to Compel Answers to Interrogatories from the Plaintiff is Allowed in Part and Denied in Part. (#50.)

The Defendant's motion to compel is allowed as to interrogatories no. 6, 7 (parts (a) and (b) only), 8, 9, and 10. The remainer of the Defendant's motion is denied.

> **Interrogatory No. 6:** Do you claim damages in this action based on loss of decedent's care, guidance, advice, counsel, training, protection, society, comfort or companionship? If so, state: a. The amount of damages claimed; b. The method by which such amount was computed and determined; and c. A full description of the basis for the claim. (#50 at 3.)

The Plaintiff shall answer interrogatory no. 6 in full.[8] Parties must answer interrogatories that seek calculations of damages. *See W.N. Motors, Inc. v. Nissan N. Am., Inc.*, No. 21-CV-11266-ADB, 2022 WL 1568443, at *4 (D. Mass. May 18, 2022) ("[Fed. R. Civ. P. 26] requires the Plaintiff to place a numerical value on each category of damages.") (collecting cases); *Britton v. Marcus, Errico, Emmer & Brooks, P.C.*, No. 18-CV-11288-IT, 2021 WL 3604841, at *2 (D. Mass. Aug. 13, 2021) (compelling the plaintiff to answer interrogatories that sought a calculation of the damages).

[8] The parties have agreed that Evelyne Julce will issue responses to interrogatories before her formal appointment as representative of Jeanica Julce's estate. (#43.)

Although it is difficult to quantify intangible damages such as those available in a wrongful death case, the Plaintiff must provide a basic accounting of her damages and brief basis for them.

> **Interrogatory No. 7:** Do you claim damages based on your mental anguish, grief or sorrow resulting from the death of the decedent? If so, state: a. The amount of damages claimed; b. The method of computing or determining the amount of damages for such claim; c. A detailed description of your, or any other previous personal representative of Jeanica Julce, physical and mental condition for the year immediately preceding decedent's death, including any illnesses, injuries, periods of hospitalization, visits to doctors, issue of medication and drugs, and similar information; and d. A detailed description of your health since the decedent's death. (#50 at 4.)

The Plaintiff must answer parts (a) and (b) of this interrogatory but not parts (c) and (d). As set out above, interrogatories seeking calculations of damages—here, (a) and (b)—are fair.

Detailed descriptions of Jeanica Julce's personal representatives' health, however, are disproportional to the needs of this case.[9] The Defendant seeks highly sensitive health information but cites no authority for the proposition that under Massachusetts law, damages for mental anguish, grief, or sorrow depend on a party's health before or after an incident. *See* #50 at 4-5.

> **Interrogatory No. 8**: Please state the full and complete factual and evidentiary bases in the custody of plaintiff and counsel at the time of filing the Complaint that support the allegation, set out in Paragraph 28 of the Complaint, that Defendant's boat "struck Jeanica Julee," including identifying any documents in support of such. (#50 at 5.)

The Plaintiff must answer interrogatory no. 8 but may omit any expert materials or communications. "Local Rule 26.5(c)(8) [which defines 'state the basis'] provides for expansive interrogatory responses that 'identify each and every' document and communication relevant to a

[9] It appears that the Plaintiff did not object to this interrogatory as overbroad or disproportional. Nevertheless, the court has discretion to limit the question. *See Krewson v. City of Quincy*, 120 F.R.D. 6, 7 (D. Mass. 1988) (explaining that a court has discretion to deny a motion to compel that "exceeds the bounds of fair discovery" even without a timely objection); *Fecteau v. City of Mount Vernon*, No. 23 CIV. 09173 (KMK)(JCM), 2025 WL 2391410, at *3 (S.D.N.Y. Aug. 15, 2025) ("the Court may nevertheless exercise its inherent authority to limit irrelevant or non-proportional discovery.")

contention, as well as lists of acts, omissions, persons, and facts[.]" *United States ex rel. Long v. Janssen Biotech, Inc.*, No. CV 16-12182-FDS, 2022 WL 4124018, at *6 (D. Mass. Sept. 9, 2022). The Plaintiff's allegation that the Defendant struck the decedent with the propellor of his boat is central to this case.[10] She must identify the information that underlies her contention besides any expert reports or communications.[11] *See Patel v. 7-Eleven, Inc*., No. CV 17-11414-NMG, 2019 WL 10959829, at *5 (D. Mass. Dec. 16, 2019) ("[c]ontention interrogatories are a proper means to establish the factual and legal bases for the adverse party's claims.").

> **<u>Interrogatory No. 9</u>**: Please state the full and complete factual and evidentiary bases obtained by plaintiff and counsel since filing the Complaint that support the allegation, set out in Paragraph 28 of the Complaint, that Defendant's boat "struck Jeanica Julee," [sic] including identifying any documents in support of such. (#50 at 5.)

For the same reasons as above, the Plaintiff must answer interrogatory no. 9 but may omit any expert materials.

---

[10] The Plaintiff's argument, that she is a "layperson" and cannot possibly answer questions related to matters of which she has no "personal knowledge" is without merit. (#53 at 2.) Both federal cases that the Plaintiff cites for this position are inapposite. *Id.* at #3. *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 49-50 (1st Cir. 1990) dealt with the probative force at summary judgement of an interrogatory answer that stated what an expert would testify. The Plaintiff is not being asked to preview her expert's testimony, only to support her contentions with the discoverable facts available to her. *See In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*, No. MDL 13-2419-RWZ, 2015 WL 13715291, at *5 (D. Mass. Sept. 8, 2015).

*Tyler v. Suffolk Cnty.*, 256 F.R.D. 34, 37 (D. Mass. 2009) offers the Plaintiff no help either. Although the court limited interrogatories directed to "you" (in reference to the defendants), it explained that for "interrogatories posed more generally, [] the defendants may not rely purely on their personal knowledge." Rather, defendant's must use "all reasonably obtainable information within their position, custody, or control" to answer those general questions. *Id.*

[11] During the Defendant's deposition and at the hearing, the Plaintiff's counsel stated that he had hired a pathologist who appears to have concluded that the decedent had been hit by a propellor. (#45-1 at 126.) If that pathologist will be a testifying expert, identifying his or her report would be premature because expert discovery is not complete and any communications are privileged. *See* Fed. R. Civ. P. 26(b)(4)(B)-(C). If the pathologist is a consulting expert and will not testify, the Defendant cannot discover his or her materials or communications. *Id*. at 26(b)(4)(D).

> **<u>Interrogatory No. 10</u>**: Please identify fully all witnesses or individuals who provided the information to support a putative good faith basis for the allegation set forth in Paragraph 28 of the Complaint, that Defendant's boat" struck Jeanica Julee," [sic] including the person's full name, address, occupation, phone number and a summary of the person's account that was relied upon in formulating the averments in Paragraph 28. (#50 at 6.)

For the same reasons as above, the Plaintiff must answer interrogatory no. 10 but may omit any experts.

> **<u>Interrogatory No. 13</u>**: If in fact you claim that Rosenthal violated any statute, rule, code, or any other standard of care which in some way contributed to this accident, state precisely what that code, rule, statute or standard of care is and state all of the facts that you are aware of as to how this defendant violated such. (#50 at 7.)

The Plaintiff need not answer interrogatory no. 13. Although interrogatories may ask a party to apply facts to law, they "may not extend to uses of pure law, i.e., legal issues unrelated to the facts of the case. Contention interrogatories that call for pure conclusions of law are beyond the scope of Rule 33(a)(2)." *Martin v. Evans*, No. 16-CV-11362-PBS, 2018 WL 10247394, at *2 (D. Mass. Feb. 6, 2018) (internal quotation marks and citations omitted).

The Defendant does not simply ask the Plaintiff to support a particular contention with facts. Rather, he asks her to set out an entire legal theory of this case and then support it with facts. What the Defendant seeks is so broad that it hews more closely to "pure conclusions of law" than "applying facts to law." *See Martin*, 2018 WL 10247394, at *2. Accordingly, the Defendant's motion to compel Plaintiff's answer to interrogatory no. 13 is denied.

September 1, 2026

<u>/s/ M. Page Kelley</u>
M. Page Kelley
United States Magistrate Judge